**In re Andy E. HOOKS, Debtor.**

**Peggy Kennedy Branton, Plaintiff,**

**v.**

**Andy E. Hooks, Defendant.**

Bankruptcy No. 97–30232.

Adversary No. 97–03013A.

United States Bankruptcy Court,
S.D. Georgia,
Dublin Division.

Sept. 10, 1999.

John Flanders Kennedy, Hall, Bloch, Garland & Meyer, LLP, Macon, Georgia, for plaintiff.

Mr. George E. Argo, Attorney at Law, Vidalia, Georgia, for defendant.

## ORDER

JOHN S. DALIS, Chief Judge.

The Plaintiff, Peggy Kennedy Branton, by motion seeks summary judgment. She asserts an issue of law, that a default

judgment based in fraud and entered as a sanction against obstruction of judicial process cannot be discharged in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A)[1]. The Debtor/Defendant responded arguing that the default judgment cannot be shown to be based in fraud and that, rather than obstructing the course of the prior proceeding, he was not afforded a fair opportunity to participate. For these reasons, the Debtor/Defendant contends that the issue of law is not reached. The Plaintiff's motion for summary judgment is granted.

The relevant facts are as follows. In September 1995, the Defendant, d/b/a Pine State Sales & Construction, and the Plaintiff entered into a contract for the Defendant to roof Plaintiff's home. The Defendant installed a roof and the Plaintiff paid in full. Plaintiff alleges that subsequently the roof leaked and Defendant failed to correct the condition, resulting in damage to the structure and contents of Plaintiff's home.

Plaintiff brought suit against Defendant in the Superior Court of Treutlen County, Georgia, in September 1996. Plaintiff claimed breach of contract, breach of warranty, negligence and fraud. Defendant, pro se, filed an answer on October 4, 1996, denying all allegations. Also in October, Defendant gave a deposition. Plaintiff subsequently requested further information, but Defendant did not answer. On April 4, 1997, the presiding Superior Court Judge ordered the Defendant to provide complete, accurate and truthful responses to Plaintiff's previously served discovery requests. Defendant failed to comply with the order by the April 19, 1997, deadline.

On April 23, 1997, the Court dismissed Defendant's answer and entered judgment by default for the Plaintiff. The Order and Judgment specifically noted that, "The

Defendant was also warned that failure to abide by the Court's Order would result in the Defendant's Answer being stricken and judgment by default being awarded to the Plaintiff as prayed for in her Complaint." Plaintiff's award of $22,185.00 included $21,945.00 "recovery for all prayers for relief in the Complaint including fraud," $150.00 for legal expenses, and $90.00 for court costs.

The following month, May 1997, Defendant filed the underlying chapter 7 bankruptcy case. The petition listed Plaintiff as an unsecured creditor holding a nonpriority claim of $21,945.00, and listed her attorney as an unsecured creditor holding a nonpriority claim of $150.00. Plaintiff filed this adversary proceeding seeking to bar discharge of the judgment debt pursuant to § 523(a)(2)(A).

Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, this Court will grant summary judgment only if "... there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of establishing its right of summary judgment. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The evidence must be viewed in a light most favorable to the party opposing the motion. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A) & (I) and 28 U.S.C. § 1334.

Bankruptcy affords a debtor the opportunity for a fresh start by discharging the burden of debt. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112

---

1. 11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

L.E.2d 755 (1991). The Bankruptcy Code limits this opportunity, refusing discharge to certain types of debt. 11 U.S.C. § 523. One type of debt which cannot be discharged under Chapter 7 is debt for money obtained by fraud. 11 U.S.C. § 523(a)(2)(A).

■■■ Whether a debt is for money obtained by fraud may be determined by a judgment of the Bankruptcy Court. 28 U.S.C. § 157(b)(2)(A) & (I). In addition, an adjudication of fraud made by a state or federal court may have collateral estoppel effect in bankruptcy courts, rendering the debt nondischargeable. *See Grogan*, 498 U.S. at 284–285 & n. 11, 111 S.Ct. 654. Collateral estoppel bars relitigation of issues previously adjudicated. *See Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir.1995). A default judgment issued by a state or federal court may also have collateral estoppel effect in a bankruptcy court. *See e.g. id.* at 1324–1325; *League v. Graham (In re Graham)*, 191 B.R. 489, 497 (Bankr. N.D.Ga.1996); *Chisholm v. Stevens (In re Stevens)*, Chap. 7 No. 95–41828, Adv.Proc. 95–4158, slip op. (Bankr.S.D.Ga. May 17, 1996) (Davis, J.). At issue here is whether the default judgment against Defendant collaterally estops discharge of the judgment debt in bankruptcy, or whether a trial is required.

■■■ In determining whether a prior judgment has collateral estoppel effect, the bankruptcy court must apply the law of the court issuing the prior judgment. *See Bush*, 62 F.3d at 1323 n. 6 (applying federal law to determine whether federal court default judgment had collateral estoppel effect and noting that state court judgment would be reviewed under law of that state); *see also Graham*, 191 B.R. at 494. *But see Angus v. Wald (In re Wald)*, 208 B.R. 516, 520 (Bankr.N.D.Ala.1997) (finding bankruptcy courts required to apply federal law of collateral estoppel to determine whether a state court default judgment has preclusive effect). In any court, judicial records and proceedings of another court must be given the full faith and credit that they would have received in the originating court. 28 U.S.C. § 1738. Thus, a default judgment rendered by a state court of Georgia must be given the same effect in federal bankruptcy court as it would have carried in a Georgia state court proceeding. *See Graham*, 191 B.R. at 494. Therefore, bankruptcy courts apply Georgia law of collateral estoppel to determine whether a default judgment rendered by a Georgia state court precludes discharge of a debt under 11 U.S.C. § 523(a)(2)(A). *See e.g. id.; Wilcox v. Hritz (In re Hritz)*, 197 B.R. 702, 705 (Bankr.N.D.Ga.1996); *Sterling Factors, Inc. v. Whelan (In re Whelan)*, 236 B.R. 495, 501–502 (Bankr.N.D.Ga.1999).

■■■ Collateral estoppel is a discretionary doctrine. *See Whelan*, 236 B.R. 495, at 508–509 A bankruptcy court must evaluate whether applying collateral estoppel furthers both bankruptcy and general judicial policies. In determining whether a state court default judgment precludes discharge of debt, the court's decision must be consonant with both the policies driving bankruptcy law and the case law of the State of Georgia.

■■■ Georgia case law employs a four-part test to determine whether a prior judgment has collateral estoppel effect:

First, there must exist an identity of issues between the first and second actions. Second, the duplicated issue must have been actually and necessarily litigated in the prior court proceedings. Third, determination of the issue must have been essential to the prior judgment. Finally, the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding. (Citations omitted.)

*See Graham*, 191 B.R. at 495.

■■■ The first part of the test, identity of issues, is satisfied in this case because both the state court action and the

section 523(a)(2)(A) dischargeability action concern fraud. Fraud, under Georgia law, consists of five elements:

(1) false representation of a past or present fact; (2) scienter; (3) intention to induce the plaintiff to commit an act or refrain from committing an act; (4) reliance; and (5) damage.

See *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1519 (11th Cir.1989). The reliance must have been "reasonable," that is, the plaintiff must have exercised due diligence in attempting to establish the truth or falsity of the defendant's assertions. *See id.* at 1519–20. Reasonable reliance imposes a duty to investigate. *See id.* With one exception, bankruptcy law has a virtually identical definition of fraud. *See* 4 Lawrence P. King ed., *Collier on Bankruptcy* ¶ 523.08[1][e] (15th ed. rev.1998). The exception is that § 523(a)(2)(A) fraud requires only "justifiable," not "reasonable," reliance. *Field v. Mans*, 516 U.S. 59, 73–75, 116 S.Ct. 437, 445–46, 133 L.Ed.2d 351 (1995). Reliance is "justifiable" when a person is justified in relying on a representation of fact even though he might have discovered that the fact was false through investigation. *See id.* at 444, *citing Restatement (Second) of Torts,* § 540 (1976). Justifiable reliance imposes no duty to investigate unless there is obvious reason for inquiry. *See id.* Georgia's standard of "reasonable" reliance is more rigorous than bankruptcy's "justifiable" reliance requirement. *See Graham,* 191 B.R. at 495 & n. 5. Therefore, a determination of fraud under Georgia law necessarily satisfies the requirements for fraud under bankruptcy law. *See id.*

Defendant argues that no determination of fraud could have been made because no evidence of fraud was presented. However, the default judgment was issued precisely because Defendant was not cooperating in discovery. Had Defendant participated in discovery, the case could have moved forward. At the appropriate time, Defendant could have argued wheth- er Plaintiff had presented any evidence of fraud. Instead, a default judgment was entered because judicial proceedings were stymied by Defendant's inaction. Defendant cannot reasonably argue lack of evidence of fraud when his own conduct blocked the process that might have brought to light either such evidence or the lack thereof.

The default judgment "includes recovery for all prayers for relief in the Complaint including fraud." This language evidences a basis in fraud. Therefore, the default judgment for fraud issued by the Superior Court against Defendant has the requisite identity of issue with this adversary proceeding in bankruptcy for nondischargeability due to fraud.

■ The second and third factors I must consider are whether the issue of fraud was actually and necessarily litigated and whether a determination of the issue was essential to the prior judgment. Georgia law holds that a default judgment is equivalent to a decision on the merits. *See Graham,* 191 B.R. at 495. Because the default judgment at issue here satisfied claims "including fraud," the second and third requirements for collateral estoppel have been met.

■ Defendant points out that the issue of fraud was not actually litigated. Since a default judgment is equivalent to a decision on the merits under Georgia law, absence of litigation does not bar a default judgment from having collateral estoppel effect. *See Graham,* 191 B.R. at 495 & 497. Moreover, the lack of litigation was a direct result of Defendant's failure to participate in discovery.

Defendant also asserts that because the default judgment is in satisfaction of four claims, it cannot be entirely attributed to the one claim, fraud, which is nondischargeable. Defendant maintains that the default judgment does not indicate which, if any, of the four claims was actually litigated and necessarily decided. The question of apportionment of damages

among several claims is a common issue, since it is unusual to bring a suit for fraud alone. *See e.g. St. Laurent v. Ambrose (In re St. Laurent)* 991 F.2d 672, 676 (11th Cir.1993); *Hritz,* 197 B.R. at 705; *Graham,* 191 B.R. at 491. Fraud would necessarily occur in a context that would give rise to other claims, such as breach of contract or conversion.

In *St. Laurent,* the Eleventh Circuit Court of Appeals considered whether a Florida state court judgment based on three grounds was nondischargeable in bankruptcy. 991 F.2d at 676. St. Laurent was a real estate developer held liable for breach of contract, breach of warranty and fraud, who sought to discharge the judgment against him in a Chapter 7 bankruptcy filing. *See id.* at 676, 675. The Eleventh Circuit quoted *Moore's Federal Practice,* "if the judgment fails to distinguish as to which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect." *See id. (citing* 1B James W. Moore *et al.,* Moore's Federal Practice ¶ 0.443 [5.–1], at 782 (1992)). However, the Eleventh Circuit went on to note that punitive damages had been awarded. *See id.* at 676. The Court reasoned that because such damages could only be awarded as punishment for fraud, a determination of fraud had been necessary and critical to the state court's judgment. *See id.* at 677. The Florida state court judgment of liability on three claims, including fraud, did collaterally estop relitigation of dischargeability of the debt based on fraud in bankruptcy. *See id.* at 681. Since both Florida and Georgia law require that the issue in the prior litigation be a critical and necessary part of the judgment, the reasoning of *St. Laurent* can be analogized to the Georgia state law controlling this Court's decision. *Id.* at 677. The default judgment against Mr. Hooks explicitly "includ[ed] fraud." Therefore, the fact that it was made in satisfaction of three other claims as well

does not prevent the application of collateral estoppel. *See id.* at 677.

 The final requirement of Georgia case law is that the party against whom collateral estoppel is raised had a full and fair opportunity to litigate the issue in the original proceeding. In the context of a default judgment, the test considers whose conduct caused the court to issue a default judgment rather than fully litigate the issue. *See e.g. Bush,* 62 F.3d at 1324; *Whelan,* 236 B.R. at 507–508; *Graham,* 191 B.R. at 496. A defendant who received neither plaintiff's affidavit of damages nor notice of final judgment had no control in the events leading to a default judgment, *See Whelan,* 236 B.R. at 507–508. Therefore, he was held to have had no opportunity to litigate. *See id.* Conversely, when defendants' own actions blocked litigation, they were held to indeed have had full and fair opportunity to litigate. *See Bush,* 62 F.3d at 1324; *Graham,* 191 B.R. at 496. Choosing to disregard an opportunity does not negate that the opportunity did exist.

In *Bush,* the Eleventh Circuit Court of Appeals considered this issue under federal collateral estoppel law. 62 F.3d at 1324. The Court's rationale directly relates to Georgia law because both consider whether the defendant's conduct affected his opportunity to litigate. *See id.; Whelan,* 236 B.R. at 504–505; *Graham,* 191 B.R. at 496. Bush had ignored repeated requests for trial exhibits, failed to appear at deposition or pre-trial conference, and filed no objection to either the default or final judgments rendered. *See Bush,* 62 F.3d at 1321–1322. This conduct was found to be dilatory and deliberately obstructive. *See id.* at 1324. The Eleventh Circuit refused to reward abuse of judicial process with an award of additional judicial process. *See id.*

In *Graham,* a default judgment issued by a Georgia state court as a sanction collaterally estopped discharge of debt in bankruptcy. 191 B.R. at 496. That defen-

dant, like this defendant, had initially participated in the state court action but subsequently ceased·to do so. *See Graham,* 191 B.R. at 491. The default judgment against Graham was held to meet all four requirements for collateral estoppel under Georgia law. *See id.* at 495–96.

Bearing out this approach is the recent case of *Sterling Factors, Inc. v. Whelan.*[2] 236 B.R. 495, at 501–502. There, a state court default judgment was held not to have collateral estoppel effect. *See id.* at 507–509 The defendants in *Whelan* had acted in good faith to produce documents on time, attend depositions, request extensions as necessary, and file appeals as appropriate. *See id.* at 498–501. The default judgment entered against the *Whelan* defendants was not a sanction, but a result of plaintiff's failure to serve notice combined with clerical error. *See id.* Therefore, the court held that defendants had not had a fair opportunity to litigate. *See id.*

Such an opportunity did exist for this defendant. During the course of the prior proceeding, he filed an answer and submitted to deposition. Subsequently, he failed to respond to Plaintiff's further requests for discovery. Defendant was present when the Superior Court Judge formally ordered him to provide discovery responses and specifically warned him of the consequences of ignoring the order. Regarding these facts in the light most favorable to the Defendant, I can only conclude that the default judgment against the Defendant resulted from his own failure to act, not from any lack of opportunity for him to act.

Defendant's conduct is comparable to that of the defendants in *Bush* and *Graham.* 62 F.3d at 1321–1322, 191 B.R. at 491. The opportunity to litigate was only lost by his own failure to follow the clear and explicit order of the Superior Court Judge. In contrast to the *Whelan* defen-

dants' efforts to· cooperate with the judicial process, this defendant's inaction obstructed the judicial process to the point where a default judgment was the only practical resolution available to the court. at 498–501. The fourth requirement for collateral estoppel is met because the Defendant had a full and fair opportunity to litigate.

Under Georgia law, the default judgment issued by the Superior Court of Treutlen County against the Defendant meets all requirements for collateral estoppel. However, this court must further consider whether a application of collateral estoppel in this case will be consistent with the policies of bankruptcy law and of general judicial practice.

The Bankruptcy Code protects insolvent debtors, allowing them a fresh start, free of preexisting debt. *See Grogan,* 498 U.S. at 286, 111 S.Ct. 654. The Code also ensures that creditors are treated fairly. *See id.* Debtor fraud tips the balance in favor of the creditor. Plaintiff has already attempted to litigate the question of Defendant's fraud, requesting discovery of the information necessary to resolve the issue in court. The Defendant suffered a default judgment of fraud because he choose not to participate in the legal process. To require Plaintiff to incur additional expense to litigate an issue which she has already pursued diligently is unreasonable and contrary to the Code's attention to both debtor and creditor rights.

■ This decision must also support the overall judicial system. The default judgment was issued by the Superior Court of Treutlen County, Georgia. Appeal of that judgment would appropriately proceed through the state court appellate system. The default judgment was not appealed. A bankruptcy court is not an alternate appellate court to a State court judgment.

---

**2.** *Sterling Factors v. Whelan* was decided after the parties submitted the motion and reply for summary judgment. Since its reasoning is in line with previous cases, it does not materially affect the arguments of either party.

Finally, this court's decision must uphold respect for the legal process. Defendant initially attempted to handle his case pro se. It is incumbent upon any court to regard pro se representation, especially if entered into due to economic necessity, with patience and understanding. However, the court's patience and understanding must be matched by a good faith effort on the part of the pro se litigant. Looking at the facts in the light most favorable to Defendant, good faith is absent. Inaction in the face of a court order is not a good faith effort. A party who does not show at least good faith attempts to participate in the legal process cannot be later rewarded with an additional opportunity for judicial review.

The default judgment against Defendant has collateral estoppel effect in the adversary proceeding to determine nondischargeability under § 523(a)(2)(A). The requirements for collateral estoppel under Georgia law are met by the default judgment issued by the Superior Court. The balance between debtor and creditor concerns underlying the Bankruptcy Code is promoted by a determination that this default judgment has collateral estoppel effect. Similarly, respect for prior legal process weighs against reopening the litigation. The Defendant's failure to participate in the judicial process cannot be rewarded by a second day in court.

It is, therefore, ORDERED that the Motion for Summary Judgment by Peggy Kennedy Branton is granted. The debt of $22,185.00 owed to Peggy Kennedy Branton is ORDERED excepted from the discharge issued to Andy E. Hooks in his underlying Chapter 7 bankruptcy case No. 97–30232.